UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANTRELL DANTE CONERLY,

       Petitioner,

v.

THOMAS WINN,

       Respondent.

Case No. 16-13222
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, DENYING
PERMISSION TO APPEAL IN FORMA PAUPERIS,
AND GRANTING MOTION TO AMEND [11]**

---

Petitioner Dantrell Conerly was sitting in a car waiting in a McDonald's drive-thru line as

Marcus Payne approached. Payne was behaving erratically, and an argument ensued. Eventually,

Conerly shot and killed him. A Genesee Circuit Court jury convicted Conerly of second-degree

murder, carrying a concealed weapon, receiving and concealing a stolen firearm, and possessing

a firearm during the commission of a felony. He was sentenced to a total of 32 to 52 years'

imprisonment. Conerly filed a habeas corpus petition in this Court pursuant to 28 U.S.C. § 2254,

claiming that his trial counsel was ineffective and that the evidence was insufficient to sustain his

conviction for receiving and concealing a stolen firearm. For the reasons that follow, the Court

will deny the petition.

**I.**

By way of background, the Michigan Court of Appeals described the incident leading to

Conerly's conviction as follows:

> Darwin Groves testified that the victim, Marcus Payne, was his neighbor.
> According to Groves, shortly before 2:00 a.m. on the morning of July 2, 2012,

Payne was attempting to open Groves's door and appeared drunk or high. Groves went outside to help Payne to Payne's house. Payne was jovial, singing, and dancing.

Payne went to the McDonald's parking lot directly next to Groves's home and started singing and dancing near the drive-thru window. Groves called 911 because he was concerned that Payne could get hurt. Groves heard two gunshots and saw that a black Grand Prix in the drive-thru had a gun at the edge of its open passenger-side window. At that time, Payne was five or six feet away from the Grand Prix, had his hands in the air, and was not armed.

Lateesha Robinson testified that she and Conerly were in her black Grand Prix. According to Robinson, she noticed Payne dancing, talking, and waving his arms near the dumpster area in front of her vehicle. Robinson watched Payne dance for three to four minutes. Payne did not have a weapon and did not touch her vehicle. She was talking to a McDonald's employee when she heard two shots come from inside her car.

Conerly testified that Payne rushed his car while slurring words. Conerly drew his gun and told Payne to get away from the car. According to Conerly, Payne responded by saying "I'll kill you" and then approached the car a second time. Conerly could not see Payne's left hand and was worried that Payne might have a knife. Conerly testified that he shot Payne after Payne came within two feet of the vehicle.

Calvin Childs testified that he was in line at the McDonald's drive-thru and saw Payne dancing and listening to music in the parking lot. According to Childs, Payne exchanged words with passengers in a black Grand Prix, which was two cars ahead of Childs's van in the drive-thru. Childs saw Payne put his hands in the air and saw a black handgun come out of the Grand Prix's passenger window. Payne's hands were open and empty. The gun went back inside the passenger window and it looked like Payne was about to walk off, but he turned around and continued arguing. The gun came out of the window and fired two shots. According to Childs, Payne never went near the Grand Prix.

Joshua Hendrick testified that he was in line between the Grand Prix and Childs's van in the drive-thru. According to Hendrick, Payne was being loud, dancing, and clapping his hands in the parking lot. Payne talked to the people in the Grand Prix and went within two feet of the Grand Prix, but he never attempted to reach toward the vehicle. Hendrick testified that Payne had nothing in his hands and did not appear armed, but he did say to Conerly that he was "going to get my boy to get you."

Payne was pronounced dead when police arrived. Dr. Brian Hunter testified that Payne died of a gunshot wound to the chest and that Payne was most likely shot from a distance of more than three feet.

Michigan State Police Trooper Michael Troutt testified that he found Conerly and Robinson arguing in a black Grand Prix a short distance from the McDonald's.

Flint Township Police Department Officer Nicholas Sabo testified that he found a black handgun under the Grand Prix's passenger seat where Conerly had been sitting.

Regina Knuckles testified that she was the registered owner of the handgun, but that it was stolen from her vehicle in April 2012. Conerly testified that he purchased the gun from a friend for $200 in cash in May or June of 2012. According to Conerly, he did not obtain a receipt or register the gun, even though he knew that he was supposed to do so.

*People v. Conerly*, No. 318164, 2014 WL 6089505, at *1–2 (Mich. Ct. App. Nov. 13, 2014) (per curiam) (paragraphing altered).

Following his conviction, Conerly appealed to the Michigan Court of Appeals, raising two claims: (1) he was denied the effective assistance of counsel because his trial counsel did not request (or object to the lack of) an instruction expressly explaining that the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense; and (2) the evidence was insufficient to sustain his conviction for receiving and concealing a stolen firearm. (R. 9-17, PID 1207.) The Michigan Court of Appeals affirmed Conerly's convictions in an explained decision. *See Conerly*, 2014 WL 6089505.

Conerly raised the same two claims in an application for leave to appeal to the Michigan Supreme Court. (R. 9-18, PID 1251–52.) But the Michigan Supreme Court denied the application in a summary order because it was "not persuaded that the questions presented should be reviewed." *People v. Conerly*, 866 N.W.2d 434 (Mich. 2015).

Conerly filed his federal habeas petition in September 2016, raising the same two claims. He has not sought state-court post-conviction relief or petitioned the United States Supreme Court for *certiorari*.

**II.**

As will be discussed, the Michigan Court of Appeals decided both of Conerly's claims

"on the merits," so this Court's standard of review stems from the Antiterrorism and Effective

Death Penalty Act of 1996, which prohibits this Court from granting habeas corpus relief unless

the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §

2254(d).

**III.**

**A.**

Conerly first claims that he was deprived of the effective assistance of counsel because

his trial counsel failed to request an instruction specifically addressing the burden of proof for

self-defense.

"An ineffective assistance claim has two components: A petitioner must show that

counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v.*

*Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

The Michigan Court of Appeals considered both prongs of the *Strickland* test "on the

merits." Under the first prong, the court sided with Conerly, finding that his counsel performed

unreasonably:

> Michigan's model jury instructions provide that the trial court should instruct the
> jury that "the prosecutor must prove beyond a reasonable doubt that the defendant
> did not act in self-defense" when there is some evidence that the defendant acted
> in self-defense. Here, self-defense formed the entire basis of Conerly's defense.
> The parties engaged in extensive pre-and post-trial discussion of the appropriate
> self-defense instructions. The burden of proof instruction is a standard self-

defense instruction, and its use note provides that the trial court should give the instruction where there is some evidence that the defendant acted in self-defense. We are unable to think of any possible reason why defense counsel would omit this instruction as a matter of trial strategy in this case. It appears that the omission was inadvertent. Given that self-defense formed the entire basis of Conerly's claim, we include that defense counsel's omission of this instruction was objectively unreasonable.

*Conerly*, 2014 WL 6089505, at *3 (footnote omitted).

But the court rejected Conerly's claim under the prejudice prong:

Here, the trial court instructed the jury that the prosecutor had the burden to prove Conerly guilty beyond a reasonable doubt. It further instructed that Conerly was "not required to prove his innocence or do anything." Finally, the trial court also instructed the jurors that they could not find Conerly guilty of murder if they found that Conerly acted in lawful self-defense.

Given the sufficiency of the trial court's correct general instructions regarding the burden of proof, we conclude that it is not reasonably probable that the result of the proceeding would have been different had the trial court issued this instruction. The jury was aware that the prosecutor had to prove Conerly's guilt beyond a reasonable doubt, that Conerly did not have to prove anything, and that Conerly's action may have been justified by self-defense. Had the jury believed that Conerly acted in self-defense, it would have acquitted him. Accordingly, we conclude that Conerly has not shown that defense counsel's failure to request this instruction prejudiced him.

*Conerly*, 2014 WL 6089505, at *4 (footnote citations omitted).

This decision was not an unreasonable application of Supreme Court law. To satisfy the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.*

True, the jury was never instructed expressly that the prosecution had to prove the absence of self-defense beyond a reasonable doubt. But that proposition was implicit in, and logically followed from, several other instructions. *See*, *e.g.*, *Seaman v. Washington*, 506 F.

App'x 349, 361 (6th Cir. 2012) (noting in the context of a *Strickland* prejudice analysis, "A challenge to a jury instruction may not be judged in 'artificial isolation' but must be considered 'in the context of the instructions and the trial record as a whole.'" (citation omitted)). At several points, the trial court instructed the jury that the prosecution had the burden to prove each element of the charged offenses beyond a reasonable doubt. (R. 9-14, PID 1138–39, 1148–49.) The trial court also instructed the jury that one of the elements of second-degree murder (and first-degree murder) that the prosecution had to prove beyond a reasonable doubt was that "the killing was not just justified, excused or done under circumstances that reduced it to a lesser crime." (R. 9-14, PID 1149–50.) Finally, the trial court instructed that "[i]f a person acts in lawful self-defense, that person's actions are justified and he is not guilty of First Degree Murder or Second Degree Murder." (R. 9-14, PID 1151.)

Jurors are presumed to follow their instructions. *Bales v. Bell*, 788 F.3d 568, 579 (6th Cir. 2015). Making that presumption here, the jury necessarily placed on the prosecution the burden of proving beyond a reasonable doubt the absence of self-defense. The jury was instructed that the prosecution had to prove each element of the offense beyond a reasonable doubt, that one element of the offense was the absence of justification, and that one form of justification was self-defense. So the omission of an instruction specifically stating that the prosecution had to prove the absence of self-defense beyond a reasonable doubt was not prejudicial. Simply put, as the Michigan Court of Appeals reasonably concluded, "Had the jury believed that Conerly acted in self-defense, it would have acquitted him." *Conerly*, 2014 WL 6089505, at *4.

Accordingly, habeas corpus relief is not warranted for this claim.

6

**B.**

Conerly next claims that the evidence was insufficient to prove beyond a reasonable doubt that he knew that the firearm he used to shoot Payne was stolen.

To assess a sufficiency of evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The *Jackson v. Virginia* standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). The standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). "Adding to this extremely high bar are the stringent and limiting standards of AEDPA," which allows a federal habeas court to disrupt "a state court's decision that correctly identified and applied the controlling Supreme Court precedent only if the application of that precedent was objectively unreasonable, meaning more than incorrect or erroneous." *Id*. (internal quotation marks and citations omitted). The *Jackson* standard "is applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law,'" so the Court will look to Michigan law. *Id*. at 531 (quoting *Jackson*, 443 U.S. at 324 n.16).

Michigan law makes it a felony to receive or conceal a stolen firearm. Mich. Comp. Laws § 750.535b(2). A conviction for that offense requires proof that the defendant "(1) received [or]

concealed . . . (2) a stolen firearm . . . (3) knowing that the firearm . . . was stolen." *People v. Nutt*, 677 N.W.2d 1, 16 (Mich. 2004).

> The Michigan Court of Appeals rejected Conerly's claim on the merits as follows:
>
> Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime, including the defendant's knowledge. Among other things, the defendant's possession of a stolen item shortly after it was stolen, the purchase price of the article compared with its value, and a lack of reasonable explanation for possessing a stolen item may support an inference that the defendant knew the item was stolen. Jurors may use common sense and everyday experience to evaluate evidence.
>
> Here, [the gun's owner] testified that her handgun was stolen in April 2012. Conerly testified that he purchased the handgun in May or June 2012, he paid $200 in cash, and did not receive a receipt. Conerly also testified that he did not register the handgun despite knowing that he was supposed to do so.
>
> Viewing this evidence in the light most favorable to the prosecutor, we conclude that it sufficiently supported Conerly's conviction of receiving and concealing a stolen firearm. The manner of purchase and Conerly's failure to register the handgun when he knew that the law required him to do so allowed the jury to reasonably infer that Conerly knew that the handgun was stolen.

*Conerly*, 2014 WL 6089505, at *2–3 (footnote citations omitted).

This decision was not unreasonable. Conerly bought the gun from a friend at the friend's house around a month before he used it to kill Payne. (R. 9-13, PID 1006, 1022.) Conerly paid $200 cash and did not get a receipt, because, in his words at trial, the weapon was "[b]ought off the street." (R. 9-13, PID 1023.) After buying the weapon, he failed to register it even though he knew he was required to do so. (R. 9-13, PID 1024.) When viewed in the light most favorable to the prosecution, this circumstantial evidence supported the Michigan Court of Appeals' conclusion that the jury could have reasonably found that Conerly knew the weapon was stolen. Thus, habeas relief is not warranted for this claim.

**IV.**

For the reasons stated, the Court concludes that Conerly is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court DENIES and DISMISSES WITH PREJUDICE the petition for a writ of habeas corpus.

In order to appeal the Court's decision, Conerly must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and citation omitted). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901–02 (6th Cir. 2002) (per curiam).

Here, reasonable jurists would not debate the correctness of the Court's rulings on Conerly's habeas claims, which are devoid of merit for the reasons explained. Thus, the Court DENIES a certificate of appealability.

The Court also DENIES leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a); 28 U.S.C. § 1915(a)(3).

Finally, along with his reply brief, Conerly filed a motion to amend. (R. 11.) It appears that he believed he needed leave of the Court to file his reply brief as a supplement to the briefing offered with his petition. As the Court considered Conerly's arguments in his reply brief,

the motion to amend is GRANTED.

IT IS SO ORDERED.

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
U.S. DISTRICT JUDGE

Dated: August 1, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 1, 2017.

s/Keisha Jackson<br>
Case Manager